UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ALEXANDER WOHL,

                                    Plaintiff,

                                                                        1:23-CV-1276
            v.                                                          (ECC/DJS)

VAIL RESORTS INC. and VAIL RESORTS
MANAGEMENT COMPANY,

                                    Defendants.

_____

APPEARANCES:                              OF COUNSEL:

SMILEY & SMILEY                           ANDREW SMILEY, ESQ.
Attorneys for Plaintiff                   JASON D. FRIEDMAN, ESQ.
28 Liberty Street - 6th Floor             MICHAEL SCOTT SOLOMON, ESQ.
New York, New York 10005                  ROSA M. FEENEY, ESQ.

GFELLER LAURIE LLP                        CHARLES F. GFELLER, ESQ.
Attorneys for Defendants                  BRIAN A. BIRENBACH, ESQ.
977 Farmington Avenue - Suite 200         MADISON E. CALKINS, ESQ.
West Hartford, Connecticut 06107

ZWEIG LAW PC                              STEVEN M. ZWEIG, ESQ.
Attorney for Defendants
5872 Camp Road
Hamburg, New York 14075

**DANIEL J. STEWART**
**United States Magistrate Judge**

## MEMORANDUM-DECISION and ORDER

Plaintiff seeks to compel Defendants' responses to a document demand and certain

deposition questions, and to produce an additional individual for deposition (the "Motion

- 1 -

to Compel"). Dkt. No. 61. Defendants oppose such disclosure. Dkt. No. 62. For the reasons set forth below, Plaintiff's Motion to Compel is **DENIED**.

## I. BACKGROUND

On October 13, 2023, Plaintiff commenced this action by filing a Complaint alleging that he was injured when he fell while skiing and struck a wooden barrier at Hunter Mountain. Dkt. No. 1. On September 20, 2024, Defendants moved for summary judgment, Dkt. No. 22, which was denied on September 15, 2025. Dkt. No. 39. On March 11, 2026, Plaintiff moved for summary judgment. Dkt. No. 47. That motion is currently pending. On May 14, 2026, Plaintiff "request[ed] a discovery conference to address three (3) discrete discovery disputes that the parties have been unable to resolve." Dkt. No. 57. The Court held a discovery conference on May 29, 2026. Dkt. Nos. 58 & 60.

## II. DISCUSSION

### A. Prior Accident Reports

Plaintiff seeks production of prior accident reports. Dkt. No. 61 at pp. 7-8. At the conference, "[o]n consent, the time period for the demand for prior accident reports [wa]s limited to the period from when Defendant purchased Hunter Mountain," Dkt. No. 60, but Defendants continued to object to production of this evidence despite the temporal limitation.[1] Dkt. No. 62 at pp. 1-4. Plaintiff notes that "[t]his is a fencing-collision case"

---

[1] Following briefing by the parties, Plaintiff filed a letter explaining that it was Plaintiff's "understanding . . . that defense counsel was directed to submit such accident reports to the Court for an in-camera review" and remarking that "[t]here is no indication that defense counsel has done so." Dkt. No. 63. As Defendants correctly note, the text order stated only that, "[i]f defense counsel wishes to file documents for an in camera review, it is authorized to do so." Dkt. No. 64 (quoting Dkt. No. 60). This is also consistent with the Court's statement at the conference that the

wherein "Plaintiff alleges negligent placement of a wooden fence," and contends that "[p]rior . . . accident reports involving contact with, or failure of, wooden fencing at Hunter Mountain go directly to notice, foreseeability, and whether Defendants had actual or constructive knowledge of a recurring hazardous condition." Dkt. No. 61 at pp. 7-8. In response, Defendants argue that "the only evidence relevant to whether the fence at issue posed an unreasonable danger is evidence that speaks directly to the condition, placement, and characteristics of th[e] specific fence [that Plaintiff collided with] in its specific location," such that "[o]nly incidents involving the object in question can prove whether that specific object—as opposed to objects in general—created a risk above and beyond the inherent risks of skiing." Dkt. No. 62 at p. 2.

"The scope of discovery is set forth in Rule 26 of the Federal Rules of Civil Procedure." *Twin Bridges Waste & Recycling, LLC v. Cnty. Waste & Recycling Serv., Inc.*, 2022 WL 5240584, at \*2 (N.D.N.Y. Oct. 6, 2022). "That Rule has been amended, on several occasions, to reflect evolving judgments as to its proper ambit, and to create a balance between the need for evidence and the avoidance of undue burden or expense." *Id.* "The touchstone of the scope of discovery is relevance; discovery sought must in the first instance be relevant to a party's claim or defense." *Id.* (quotation omitted). "Rule 26 now defines the scope of discovery to consist of information that is relevant to a 'claim or defense' of the parties and that is 'proportional to the needs of the case.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(1)).

---

Court is willing to review the documents *in camera* to make a determination if needed. The Court, therefore, denies Plaintiff's request that the Court "issue a further Order directing counsel for the defendant to comply with the a[forementioned] directive[]." Dkt. No. 63.

Here, significantly, Plaintiff does not seek prior accident reports relating to the specific fence that Plaintiff collided with. In fact, at the May 29 conference, Defendants confirmed that there are no prior incidents with the particular fence that Plaintiff collided with.[2] Instead, Plaintiff seeks prior accident reports for any and all other wooden fences at Hunter Mountain. Plaintiff has not, however, established a substantial similarity between the fence that Plaintiff collided with and the other fences located at Hunter Mountain. The only similarity noted by Plaintiff between the fences is that they are made of wood. *See* Dkt. No. 61 at p. 7. This is insufficient.

Defendants additionally argue that the request should be denied because any relevance of these documents "is overwhelmed by the proportionality limits of Rule 26." Dkt. No. 62 at p. 3. Specifically, Defendants provide a declaration from their Director, Senior Litigation Counsel, Kristen Davey, indicating that, "[t]o search for documentation of collisions involving fences at Hunter Mountain dating back to 2019 (the year Vail Resorts acquired Hunter Mountain), [she] would be required to manually review approximately five bankers' boxes of incident report cards" that are "index-card-sized forms documenting every instance in which a guest requested or otherwise required care from Ski Patrol, ranging from minor cuts and scrapes or altitude sickness to serious skiing and riding injuries." Dkt. No. 62-1 at ¶¶ 1-2. The Court does not, however, find that this information impacts its ruling. Courts have rejected arguments that the amount of

---

[2] The parties' discussions at the May 29 conference and their subsequent briefing does not indicate that there is any dispute between Plaintiff and Defendants as to whether there were any prior incidents with the particular fence that Plaintiff collided with. To the extent that there were prior incidents with that fence, reports relating to such incidents would arguably be relevant and discoverable.

discovery is disproportionate or unduly burdensome for a much greater number of boxes of documents where that information is relevant and proportional to the needs of the case. *See*, *e.g.*, *Xpedior Creditor Tr. v. Credit Suisse First Bos. (USA), Inc.*, 309 F. Supp. 2d 459, 464 (S.D.N.Y. 2003) (where defendant represented "that there may be as many as 100 boxes of documents," the court found that "review of these documents is a significant undertaking," but "is not unduly burdensome"); *Waite v. UMG Recordings, Inc.*, 2020 WL 3959185, at *2 (S.D.N.Y. July 13, 2020) (finding that "the undertaking required to review the contents of over 2,000 boxes of materials, boxes that may or may not contain relevant information," "must be weighed against plaintiffs' right to discovery that is relevant to its claim and proportional to the needs of the case"); *Grayson v. No Labels, Inc.*, 2021 WL 8199894, at *3 (M.D. Fla. Nov. 17, 2021) (where defendant stated that "the records are contained in 23 boxes," the court "d[id] not consider this amount of discovery disproportionate or unduly burdensome").

The Court grounds its findings on the fact that the information sought is not—based on the information presented by Plaintiff—relevant and so rejects Plaintiff's request to compel Defendants to produce prior accident reports.

## B. Privilege

Plaintiff asks the Court to overrule objections lodged by Defendants during Kristin Benjamin's deposition on April 9, 2026.  Dkt. No. 61 at p. 1.  The questions Plaintiff states were blocked include:

> [w]hether the contributing factors of the accident were discussed at the post-incident review; [w]hether future prevention measures or future risk mitigation were discussed; [w]hether the periodic and slope-safety reviews

described in Section 7.2 of Vail's Risk Resource Guide were discussed; and whether, since December 2022, the wooden fences at Hunter Mountain had been the subject of any review.

*Id.* at p. 2 (citing Dkt. No. 61-2 at pp. 87-88 & 91-94). In response, Defendants contend that testimony concerning Ms. Benjamin's "verbal communications with . . . in-house litigation counsel made during a post-incident review" conducted following Plaintiff's injury are attorney-client privilege. Dkt. No. 62 at p. 4 (citing Dkt. No. 62-3 at pp. 49-51, 71-73, 77, 81-83, 87-88, 91-92); *see also* Dkt. No. 61 at p. 1. In support of this argument, Defendants filed a declaration from Defendants' Director, Senior Litigation Counsel, Casady Pickar, who "participated in the post-incident review meeting for the incident involving Plaintiff." Dkt. No. 62-2 at ¶ 3.

"A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007) (citation omitted). Issues may arise with respect to the third consideration "in the context of communications to and from corporate in-house lawyers who also serve as business executives." *Id.* (citing cases). "[T]he question usually is whether the communication was generated for the purpose of obtaining or providing legal advice as opposed to business advice." *Id.* (citation omitted). In making this determination, courts "consider whether the predominant purpose of the communication is to render or solicit legal advice." *Id.* (citing cases).

Here, insofar as Plaintiff filed a copy of Defendants' "Incident Response Handbook," Dkt. No. 61-1, and point to it as evidencing that the meeting serves "a multi-

- 6 -

disciplinary operational and safety function" and "legal analysis is only one of the five agenda items," Dkt. No. 61 at p. 3, the Court notes that, "[i]n the context of an internal investigation, . . . th[e] test does not require a showing that obtaining or providing legal advice was the sole purpose of [the] investigation nor that the communications at issue would not have been made but for the fact that legal advice was sought." *Farrell v. United States Olympic & Paralymic Comm.*, 2023 WL 4033290, at *8 (N.D.N.Y. June 15, 2023) (quotation omitted). After all, "[r]are is the case that a troubled corporation will initiate an internal investigation solely for legal, rather than business, purposes; indeed, the very prospect of legal action against a company necessarily implicates larger concerns about the company's internal procedures and controls, not to mention its bottom line." *Id.* (quotation omitted). "The party invoking the attorney-client privilege, therefore, need only show that the provision of legal advice was a primary purpose of the investigation and of the communications as to which the privilege is claimed." *Id.* (quotation omitted).

Defendants have made that showing here. Ms. Pickar's declaration makes clear that her presence at the meeting "depended principally on . . . her knowledge of and application of legal requirements and principles, rather than . . . her expertise in business or commercial matters," and involved her both "allud[ing] to legal principles" and "engag[ing] in a legal analysis." *Vidal v. Metro-N. Commuter Ry. Co.*, 2014 WL 413952, at *5 (D. Conn. Feb. 4, 2014). Specifically, she explained in her declaration that the purpose of post-incident review meetings are for her to be "provide[d] . . . with information about the subject incident" and be presented with "a draft version of the incident investigation report" so that she "can provide legal advice concerning incident

documentation and any other legal issues that arise." Dkt. No. 62-2 at ¶¶ 2 & 4. Further, she stated that topics discussed at "these meetings may also include preservation of evidence and potential remedial measures," and she "address[es] these issues to advise on Vail Resorts' obligations under the applicable substantive law, including discovery/evidentiary duties, potential liability exposure, and the legal implications of any contemplated post-incident actions." *Id.* at ¶ 5.

That the meeting agenda also involved, in addition to "[l]egal analysis," "[f]uture risk mitigation" and an "[a]nalysis of contributing factors," Dkt. No. 61-1 at p. 3, does not change this analysis. "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." *In re Cnty. of Erie*, 473 F.3d at 419 (citation omitted).

Separately, Plaintiff asserts that Defendants failed to comply with the portion of the Court's text order stating that "any party seeking to assert an attorney client/work product privilege shall submit to the Court a complete privilege log, with a copy to opposing counsel." Dkt. No. 63 (quoting Dkt. No. 60). Defendants respond that submission of "[a] traditional log," which "is designed for discrete documents," is not necessary and would "require parsing the discussion into artificial entries." Dkt. No. 64. Given that "the communications sought to be protected appear to be oral communications that are not memorialized in documents," they "may not be subject to the requirement to produce a formal privilege log." *Walker v. United States*, 2021 WL 4988151, at *4 (E.D.N.Y. Aug. 10, 2021).

### C. Additional Deposition

Finally, Plaintiff seeks the deposition of Defendants' "Director of Health & Safety."  Dkt. No. 61 at p. 3.  On February 24, 2026, Plaintiff served a Notice of Deposition for Charles Firth, the Director of Health & Safety for Vail Resorts.  *Id.*; Dkt. No. 61-3.  Plaintiff claims Defendants advised that Mr. Firth was newly employed and did not hold his position on the date of the accident, and Plaintiff thereafter "ask[ed] for production of the person who did hold the position of Director of Health & Safety for Vail Resorts at the time of the accident, or in the alternative, to identify that person and provide their last known address."  Dkt. No. 61 at p. 3.  Plaintiff asserts that it repeatedly followed up with Defendants about this request and, "on May 6, 2026, for the very first time, defense counsel objected to the deposition, stating 'this request appears aimed at obtaining a second deposition of a corporate representative without leave of court as required.'"  *Id.* (quoting Dkt. No. 61-4 at p. 2); *see also* Dkt. Nos. 61-5 & 62-4 (Rule 30(b)(6) Notice to Take Deposition of Defendants by Their Designee).

Plaintiff responds that it "is not seeking a second Rule 30(b)(6) deposition."  Dkt. No. 61 at p. 3.  Instead, Plaintiff insists that it "seeks the fact deposition of an individually identified witness who has personal knowledge of Vail's health-and-safety policies, its post-incident review processes . . . , and who is independently identified in those policies as a participant in post-incident safety reviews."  *Id.*  Further, Plaintiff maintains that it is "entitled to question . . . about the safety issues at the heart of this case — the design, placement, inspection, maintenance, and padding of the wooden fence; Vail's policies for

- 9 -

marking trail boundaries and protecting skiers from obstacles; its impact-mitigation decisions; and its post-incident safety reviews." *Id.*

Notwithstanding Plaintiff's attempts to distinguish the issues for which Plaintiff seeks to depose the Director of Health & Safety, it is apparent that they pertain to the same matters that were encapsulated in the topics included in Plaintiff's Rule 30(b)(6) Notice. Dkt. Nos. 61-5 & 62-4; *see*, *e.g.*, *Live Face On Web, LLC v. BF Advance, LLC*, 2017 WL 11373380, at *2 (E.D.N.Y. Dec. 12, 2017). Defendants designated William Rod as their Rule 30(b)(6) witness to testify on Defendants' behalf as to these topics. *See generally* Dkt. No. 61-6. Mr. Rod's responses are binding on Defendants. *See Keepers, Inc. v. City of Milford*, 807 F.3d 24, 34 (2d Cir. 2015); *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010). Any further discovery of these topics would be "unreasonably cumulative or duplicative" and so must be limited by the Court. *Beverley v. New York City Health & Hosps. Corp.*, 2024 WL 2125402, at *8 (S.D.N.Y. May 13, 2024) (citing Fed. R. Civ. P. 26(b)(2)); *see also Dongguk Univ. v. Yale Univ.*, 270 F.R.D. at 74 ("[S]ince depositions are inherently 'time-consuming and inefficient,' they ought to 'be productive and not simply an excuse to seek information that is already known.'"").

To the extent that Plaintiff contends that Mr. Rod lacked adequate knowledge of the topics noticed for his deposition, *see* Dkt. No. 61 at p. 5, the Court draws attention to the fact that Mr. Rod was deposed on December 3, 2025. Dkt. No. 61-6 at p. 1. To the Court's knowledge, this is the first time that Plaintiff has raised issue with Mr. Rod's testimony. In fact, this problem was not even raised at the May 29 discovery conference.

"If Plaintiff[] believed that Defendant[s'] 30(b)(6) deponent was inadequately designated or prepared or limited in the scope of the answers he was permitted to give, Plaintiff['s] recourse was to make a motion directed to the 30(b)(6) deposition." *Fishon v. Peloton Interactive, Inc.*, 2021 WL 4124661, at *2 (S.D.N.Y. Sept. 9, 2021). "That motion then would have been judged against the law relevant to the topics that can be addressed through a 30(b)(6) deposition and the preparation required for such a deposition." *Id.* (citing cases). Instead, Plaintiff continues to maintain that it is seeking to conduct "a fact-witness deposition," Dkt. No. 61 at p. 4, while, at the same time, arguing that such deposition is necessary because the testimony of Defendants' 30(b)(6) witness was insufficient. *Id.* at pp. 5-7.

In any event, Plaintiff has not shown that Mr. Rod was unprepared at his deposition. Much of Plaintiff's disdain does not appear to be the result of Mr. Rod lacking knowledge of or preparation for the topics noticed. For example, Plaintiff states:

> His Vail orientation was "nothing specific to patrol" ([Dkt. No. 61-6] 21:10–11), and the slope-safety course did not cover "padding or impact mitigation devices" (*id.* 26:10–12). No documentation states how trail boundaries should be established — "No, there is not" (*id.* 88:5–7) — and the trail maps "do not" show what is on-trail versus off-trail (*id.* 90:15–22). On the date of the accident, the wooden fence was "not padded in any way." (*Id.* 281:17–21.)

Dkt. No. 61 at p. 7. Similarly, Plaintiff emphasizes Mr. Rod's testimony that "'individual fences are not recorded,'" he was not "aware of . . . records of repairs, design, or purchase of materials for the fence," "he has no construction experience," and he did not receive "training on padding." *Id.* at p. 6 (quoting Dkt. No. 61-6 at 219:16-220:3). Rather than

- 11 -

illustrating a lack of knowledge about information responsive to Plaintiff's questions, Mr. Rod's responses display his awareness regarding the subjects questioned by Plaintiff.

Plaintiff also remarks that "Mr. Rod testified he conducted no search for fence documents before the deposition." *Id.* at pp. 6-7. Similarly, Plaintiff draws attention to the fact that "[o]n prior incidents . . . , Mr. Rod confirmed he did not search." *Id.* at p. 6. However, a review of the portions of the transcript provided by Plaintiff shows that Mr. Rod was able to and did answer most of the questions posed to him about the topics at issue. *See generally* Dkt. No. 61-6. That a witness "did not prepare by reviewing documents . . . does not mean that he was unable to fulfill [defendants'] obligation to provide a sufficiently knowledgeable witness to provide binding answers on [their] behalf" where the witness has "personal knowledge" of such information. *Holden v. Port Auth. of New York & New Jersey*, 2018 WL 11222516, at *1 (S.D.N.Y. Dec. 12, 2018). In fact, while not provided in full, the portions of the deposition transcript that were filed contain a statement by Defendants' counsel that "Mr. Rod, I think, is trying to tell you that he has looked through whatever documents that may exist." Dkt. No. 61-6 at 48:23-25. Plaintiff itself acknowledges that Mr. Rod was able to answer Plaintiff's questions and "confirmed that skiers colliding with fences at Hunter Mountain has occurred with regularity." Dkt. No. 61 at p. 6. As to any questions that Mr. Rod did not know the answer to, *see*, *e.g.*, *id.* (stating that Mr. Rod testified that he did not know "when the fence was installed" and "when it was last repaired"), where "the deponent answers on behalf of the organization that it cannot remember a certain fact, that inability to remember is imputed to the organization but does not invalidate the deposition." *Fashion*

*Exch. LLC v. Hybrid Promotions, LLC*, 2019 WL 1533212, at *1 (S.D.N.Y. Apr. 9, 2019) (citations omitted).

The Court, therefore, denies Plaintiff's request to depose Defendants' Director of Health & Safety.

### III. CONCLUSION

**ACCORDINGLY,** for the reasons stated herein, it is hereby

**ORDERED**, that Plaintiff's Motion to Compel (Dkt. No. 61) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action.

Dated:   August 5, 2026
         Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge